**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JONATHAN J. GARCIA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 2:24-cv-04022 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Jonathan J. Garcia's ("Plaintiff") appeal of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 402–34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–83. (ECF No. 1, 14.) The Commissioner filed an opposition on January 29, 2025. (ECF No. 16.) As of the date of this Opinion, Plaintiff has not filed a reply, which was due on February 12, 2025, pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Having reviewed the submissions filed in connection with this appeal and having declined to hold oral argument in accordance with Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, Plaintiff's appeal (ECF No. 1) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

I.    **BACKGROUND**

A.    **Factual Background**

Plaintiff filed for SSI and DIB on October 4 and October 6, 2017, respectively, claiming bipolar disorder, an anxiety disorder, attention-deficit hyperactivity disorder ("ADHD"), and substance abuse. (*See* ECF No. 4 (Transcript of Proceedings ("Tr.")[1]) at 18.) Plaintiff's mental health ailments were first diagnosed in or around 2013, though Plaintiff is not claiming disability prior to February 24, 2017. (*Id.* at 31, 765–73.)

1.    **Plaintiff's Medical Evaluations**

During the relevant period beginning on February 24, 2017, Plaintiff was professionally evaluated by and received treatment from several medical practitioners, clinics, and institutions. (*Id.* at 31–32, 836–964.)

a.    **Stress Care of New Jersey, LLC**

Plaintiff began treatment at Stress Care of New Jersey, LLC ("Stress Care") in Matawan, New Jersey, on May 9, 2017. (*Id.* at 31, 836–51.) The progress notes from his initial psychiatric assessment at Stress Care include a diagnosis of bipolar 1 disorder and ADHD. (*Id.* at 838.) The notes also reveal Plaintiff had "an anxious and labile mood; a blunted, flat, and constricted affect; and poor insight and judgment" as well as a restless psychomotor, while his appearance, grooming, behavior, thought process, and cognition were generally normal. (*Id.* at 31, 837.) Plaintiff was prescribed Adderall and Topamax, referred for psychotherapy, and asked to return for another visit in two weeks. (*Id.* at 838.) On June 2, 2017, Plaintiff returned for his follow-up visit and showed marked improvement in his behavior, psychomotor, mood, affect, insight, and judgment, which were all within normal limits despite Plaintiff disclosing he had only been taking one of the two

---

[1] The administrative record ("AR") is set forth in this transcript. (*See generally* ECF No. 4.)

prescribed medications. (*Id.* at 840–41.) Four weeks later, on June 30, 2017, Plaintiff visited the clinic for another follow-up, during which he expressed he was "doing well on Adderall but he never started on Topamax," exhibiting a similarly improved mental status examination as in the prior visit. (*Id.* at 843–44.) Progress notes from three other visits on August 24, October 16, and November 16, 2017, all reveal normal and stable results in Plaintiff's mental status examination. (*Id.* at 846–51.)

### b. Manasa Health Center, LLC

On February 13, 2018, in the first of several visits with Dr. Nigadelle Gowda, MD ("Dr. Gowda") at the Manasa Health Center, LLC ("Manasa") in Kendall Park, New Jersey, Plaintiff reported on-and-off symptoms of mood swings, irritability, low frustration-tolerance, disturbed sleep, appetite, and focus over the years which are "resolving or [under] control with treatment." (*Id.* at 858.) Dr. Gowda noted Plaintiff had a generally normal mental status examination but no "desire to work or continue education and [was] focusing on disability." (*Id.* at 859–60.) Dr. Gowda advised Plaintiff to participate in individual and group therapy to assist him in coping with mental illness and to build key social and stress management skills. (*Id.* at 861.) Plaintiff was next seen by Dr. Gowda on April 18, 2018, during which he reported being unhappy with group therapy, as it was "not providing [his] needs, staffs are not friendly, had conflict, and . . . [he] quit the program and [is] looking [for another] closer to home," but otherwise presented with normal mental health parameters. (*Id.* at 862–65.)

### c. Doctor J. Theodore Brown Jr., Ph.D., H.S.P.P.

On February 26, 2018, Plaintiff underwent a mental status examination conducted by Dr. J. Theodore Brown Jr., Ph.D., H.S.P.P. ("Dr. Brown") in Highland Park, New Jersey. (*Id.* at 852–56.) During the examination, Plaintiff stated he was "sad, unhappy, [and] depressed about life,"

indicated he had difficulty working and keeping a job, and asserted he has had crying episodes on a weekly basis since he was a teenager. (*Id.* at 853.) Plaintiff was able to correctly explain common proverbs, showed a grasp of basic facts about the world, accurately completed basic mathematical calculations, and could count backwards from thirty by threes, but he was unable to count backwards accurately from one hundred by sevens. (*Id.* at 853–54.) According to Dr. Brown, Plaintiff's prognosis was "very much dependent upon [him] continuing to receive and benefit from mental healthcare support and treatment." (*Id.* at 854.) Dr. Brown further recommended Plaintiff "not be allowed to manage his own funds" "until [he] can be better stabilized," given he had "poor focus and concentration." (*Id.*)

### d.  Summit Oaks Psychiatric Hospital

An April 9, 2018 medical report entitled "Continuing Care/Discharge Planning" ("Summit Oaks Discharge Report") prepared by Summit Oaks Psychiatric Hospital ("Summit Oaks") states Plaintiff attended three sessions of a psychiatric intensive outpatient program ("IOP") for his depression, "which include[d] solution focused and psycho education groups to learn alternative coping skills," before he was discharged "due to poor attendance." (*Id.* at 872–73.) The Summit Oaks Discharge Report noted Plaintiff expressed some difficulty sleeping but that he neither had frequent night-wakings nor slept all day, and he usually slept 6 to 8 hours per night. (*Id.* at 878.) It noted Plaintiff had some panic attacks, obsessive compulsive behaviors, and mild hallucinations, but otherwise denied other emotional, behavioral, or cognitive conditions. (*Id.* at 879.) Plaintiff's mental status examination was likewise generally within normal limits, including a coherent and goal-oriented thought process and fair insight and judgment, with the exception of some suicidal ideation. (*Id.* at 881, 885.) The Summit Oaks Discharge Report also states Plaintiff has a fair capacity for activities associated with daily life, and indicated "motivation for treatment/growth,"

4

"average or above intelligence," "ability for insight," and "work skills" as among his strengths. (*Id.* at 884–85.)

### e. Omni Health Services, Inc.

On August 14, 2019, Plaintiff began outpatient services at Omni Health Services, Inc. ("Omni") in Highland Park, New Jersey. (*Id.* at 918–30.) In the August 23, 2019 Omni Crisis Plan ("Plan"), Omni reported that Plaintiff underwent court-mandated anger management following an assault by an ex-girlfriend during which she stabbed him in the foot. (*Id.* at 931.) Plaintiff reported concerns his anger would "translate to [] physical violence again," and listed "listening to music, working out, video games, [and] social events" as coping skills for managing his anger and/or response to triggers. (*Id.* at 931–33.) A biopsychosocial assessment indicated Plaintiff was anxious "all [his] life"; was nervous, worried excessively, and shaking "always"; and experienced paranoia and suspicion. (*Id.* at 942–43.) The Plan noted Plaintiff had customer service, computer, sales, and problem-solving employment skills. (*Id.* at 947.) The Plan also noted there was no suicide risk or current suicidal ideation, although a questionnaire about depression in which he scored within the normal range revealed Plaintiff felt he had failed more than the average person, was disappointed in himself, felt guilty, and had thoughts of killing himself but "would not carry them out." (*Id.* at 934, 939.) Overall, Plaintiff's mental status examination revealed he had "avoidant" eye contact and an "anxious" mood but was otherwise normal. (*Id.* at 951.) The Plan's discharge criteria included learning anger-management skills and discussing traumas during mandated weekly therapy sessions. (*Id.* at 935.)

While enduring homelessness and staying with various friends and in lodgings arranged by social services, Plaintiff met with Omni clinicians on a weekly basis between August 14 and October 11, 2019, occasionally missing sessions due to housing concerns. (*Id.* at 954–63.) Also on

October 11, 2019, Plaintiff was "suggest[ed] a higher level of care to help him" by his Omni clinician. (*Id.* at 954.) Clinician reports from these sessions all reflected continuous improvement in Plaintiff's mental state, social skills, and employment practice. (*Id.*) In a progress note dated August 23, 2019, Plaintiff reported being "nervous" about a real-estate license test he was scheduled to take following the therapy session. (*Id.* at 960.)

### f.   Clear Conscience Counseling

Beginning on June 10, 2021, and until approximately October 18, 2021, Plaintiff was seen at Clear Conscience Counseling ("Clear Conscience") in South Plainfield, New Jersey, for individual therapy sessions. (*Id.* at 964.) In a letter dated October 11, 2021, Dr. Hassan Sandhu, M.A., L.A.C. ("Dr. Sandhu") noted Plaintiff "struggles with feeling of depression which impacts his motivation and thought process. [Plaintiff's mental health impairments] impact his ability to focus and concentrate on work-related tasks, that have affected his ability to function properly in the workplace." (*Id.*) Plaintiff's treatment included dialectical behavioral therapy to treat symptoms of depression and anxiety. (*Id.*)

### 2.   Administrative Hearing and ALJ Lee's Determination

At the time of Plaintiff's hearing before Administrative Law Judge Peter R. Lee ("ALJ Lee") on December 7, 2022, Plaintiff was a thirty-two-year-old male with a college education who had been engaged in sporadic, short-term periods of employment since 2009. (*Id.* at 52–58.) Plaintiff testified at the hearing that he was employed as a driver for an adult medical daycare facility in a full-time capacity. (*Id.* at 52–53.) Prior to that, Plaintiff held part-time positions as a barista, security guard, overnight stocker, pipefitter, administrative assistant, and bank teller. (*Id.* at 53–56.) None of these roles lasted longer than a few months. (*Id.*) Plaintiff stated his psychological impairments cause him to "suffer from severe mood swings and [] go through []

manic phases [that are] uncontrollable" and "unpredictable" roughly every month beginning in 2017. (*Id.* at 60–61.) He testified to being unable to focus on work, engaging in altercations with coworkers and managers, and otherwise missing tasks or showing up late because of his health conditions. (*Id.* at 61–62, 64.) Plaintiff stated he was seeking mental health treatment in the form of therapy "on and off" since 2017 but paused treatment during the 2019 coronavirus pandemic ("COVID-19 pandemic") once he became homeless. (*Id.* at 64.) He stated his treatment was "sporadic because either the therapy wasn't helping [him] or the program wasn't . . . suited for [him]." (*Id.*)

Dale Elizabeth Pasculli, C.R.C., L.M.H.C. ("Pasculli"), licensed mental health counselor and vocational expert, testified that Plaintiff's employment history involves roles performed at the sedentary to medium exertional level based on Plaintiff's testimony. (*Id.* at 65–66.) In turn, Plaintiff stated no role required him to lift in excess of approximately 50 pounds. (*Id.* at 58–59.) Pasculli characterized Plaintiff's employment history as entailing five jobs: (1) "administrative clerk" performed at a light exertional level; (2) "stock clerk," which is classified as "a heavy job" but "may have actually been performed at the medium exertional level as per [Plaintiff's] testimony"; (3) "pipefitter," which, like stock clerk, is classified as a heavy job but may have been performed at the medium exertional level based on testimony; (4) "teller," a light job that "may have actually been performed at the sedentary exertional level"; and (5) "driver," a "medium job" that "may have actually been performed at a lighter exertional level as per [Plaintiff's] testimony." (*Id.* at 65–66.) Based upon her review of Plaintiff's employment history, Pasculli testified that Plaintiff could not perform any of his past work with his current medical conditions. (*Id.* at 68.) However, Pasculli testified there are positions within the national economy for someone in Plaintiff's position. (*Id.*) Those include "addresser," a sedentary role with approximately 6,000

7

jobs in the national economy; "cleaner," a light exertional role with approximately 309,000 jobs in the national economy; and "automobile repairer," a medium exertional role with approximately 200,000 jobs in the national economy. (*Id.* at 68–69.) In response to examination by Plaintiff's attorney, Pasculli conceded each of the three roles she suggested would be inconsistent with repetitive and/or unscheduled breaks, occasional lateness, and inconsistent attendance, all of which Plaintiff reports as byproducts of his mental health impairments. (*Id.* at 69–71.)

ALJ Lee found Plaintiff was not disabled within the meaning of the Act from February 24, 2017, through January 23, 2023, the date of the decision. (*Id.* at 26.) ALJ Lee found Plaintiff suffered from bipolar disorder, anxiety, ADHD, and substance abuse, but concluded, "the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" because the impairments did not result in extreme limitations. (*Id.* at 28–29.) ALJ Lee found Plaintiff had a moderate limitation in understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; and managing himself. (*Id.* at 29.) This finding was based on: (1) the mental status consultative exam with Dr. Brown in which he "could remember three out of three items immediately and one after five minutes," and "could not perform serial sevens but could perform serial threes"; (2) Plaintiff's indication he "had problems getting along" with friends and family "because he was very moody and got upset quickly," and Plaintiff's testimony as having "problems with people in authority" and "[getting] into it" with managers, leading to Plaintiff preferring to avoid others; (3) Plaintiff "could follow simple instructions" despite complaining of "problems with concentration, completing tasks, and following instructions," which would impede his ability to complete complex tasks; and (4) his ability to

prepare simple meals, attend medical appointments, and drive a car, despite sometimes having

help from family with cooking, cleaning, laundry, and shopping. (*Id.*)

Additionally, ALJ Lee found Plaintiff had the residual functional capacity ("RFC") for

performing:

> a full range of work at all exertional levels but with the following
> nonexertional limitations: the claimant can have occasional contact
> with supervisors, co-workers, and the public; able to do only simple
> and routine tasks; work must be performed in an environment free
> of fast paced production requirements where productivity is
> measured at the end of the day and with only occasional changes to
> essential job functions.

(*Id.* at 30.) ALJ Lee considered Plaintiff's alleged symptoms but found them "not entirely

consistent with the medical evidence and other evidence in the record." (*Id.* at 30–31.) Specifically,

ALJ Lee noted—despite Plaintiff's mental status examination at Stress Care showing "an anxious

and labile mood; a blunted, flat and constricted affect; and poor insight and judgment"—the rest

of the parameters were found to be within normal limits, and later, progress notes showed

considerable improvement with medication, particularly the November 16, 2017 notes. (*Id.* at 31–

32.) Similarly, Dr. Brown "failed to note any marked psychiatric findings" in a mental status

examination that, while remarking that Plaintiff could not calculate serial sevens but could

calculate serial threes and remember three out of three items immediately and one out of three after

five minutes, and that his cognitive functioning "was below average," the remainder of the

examination "was essentially benign." (*Id.* at 32.)

In his decision, ALJ Lee also observed Plaintiff's admission to the IOP at Summit Oaks

due to suicidal ideation, while serious, was short-lived "due to poor attendance." (*Id.*) It was further

noted that despite the concerning reason for admission, Plaintiff did not "require[] emergency

room intervention or inpatient hospital admission due to an exacerbation of his symptoms." (*Id.*)

Although the clinician in Plaintiff's individual therapy treatment at Omni beginning on August 14, 2019, recommended him to a "higher level of care," ALJ Lee noted the lack of evidence in the AR of continued treatment until Plaintiff began treatment at Clear Conscience on June 10, 2021. (*Id.*) ALJ Lee nevertheless recognized Plaintiff's testimony that "he had been going to therapy for the past year and a half, which helped him." (*Id.*) The decision concludes from a review of the AR that despite the clear history of bipolar disorder, anxiety, ADHD, and substance abuse, "the evidence also indicates reported improvement and relatively benign mental status examinations with compliance to prescribed medication." (*Id.*) Based on the evidence in the AR, that Plaintiff never required "recurrent emergency room visits or inpatient hospital admissions due to an exacerbation of his symptoms" was vital to ALJ Lee's decision. (*Id.*) Furthermore, ALJ Lee considered Plaintiff's testimony that he began engaging in substantial gainful employment in October 2022 as well as the dearth of evidence showing his daily activities were "markedly limited due to his impairments." (*Id.*)

Based on a thorough review of the AR as well as the hearing testimony, particularly the consistent improvements in Plaintiff's symptoms while in compliance with prescribed medication, ALJ Lee determined Plaintiff was "unable to perform a full range of work due to his impairments" but "could perform the simple tasks of unskilled work in a low contact environment." (*Id.* at 33.) Additionally, ALJ Lee found only one medical opinion regarding Plaintiff's ability to work partially persuasive, which "opined that the claimant could follow simple instructions; can sustain concentration, persistence and pace; and relate and adapt in simple work-like settings," while the remainder he found unpersuasive due to speculative language that lacked "function-by-function analysis of limitations." (*Id.*) Moreover, at the hearing, ALJ Lee adopted Pasculli's expert opinion that Plaintiff is "unable to perform past relevant work under the established RFC," and found

Plaintiff's engagement in substantial gainful employment since October 2022 "without incident" demonstrative of his ability to engage in simple work. (*Id.* at 33–34.) ALJ Lee also found "there are jobs in significant numbers in the national economy that the claimant can perform" based upon Plaintiff's "ability to perform work at all exertional levels [which] has been compromised by nonexertional limitations" as well as Pasculli's expert testimony regarding the existence of myriad jobs for an individual with similar age, education, work experience, and RFC as Plaintiff in the national economy, *see supra*, which ALJ Lee determined to be "consistent with the information contained in the Dictionary of Occupational Titles." (*Id.* at 34.)

Ultimately, ALJ Lee concluded Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and is therefore not disabled under the Act. (*Id.* at 35.)

### B.    Procedural History

This case arises out of Plaintiff's challenge to the Commissioner's denial of his application for SSI and DIB. (*See* ECF Nos. 1, 14.) On October 4 and October 6, 2017,[2] Plaintiff applied for SSI and DIB, alleging disability beginning February 24, 2017, due to bipolar disorder, an anxiety disorder, ADHD, and substance abuse. (*See* Tr. at 18.) The SSA initially denied Plaintiff's claim on March 29, 2018, and upon reconsideration on July 11, 2018. (*Id*. at 228–33, 240–42.)

On July 24, 2018, Plaintiff filed a written request for a hearing (*id.* at 243–44), and on December 7, 2022, ALJ Lee held a hearing regarding Plaintiff's claim (*id.* at 46–74). In a decision dated January 23, 2023, ALJ Lee found Plaintiff was not disabled within the meaning of the Act because he could perform work existing in significant numbers in the national economy. (*Id.* at

---

[2] In his brief, Plaintiff notes the dates for his DIB and SSI applications as October 3 and August 25, 2017, respectively. The Court notes the AR indicates the actual dates for these applications as October 4 and October 6, 2017. (Tr. 561–68.)

25–35.) ALJ Lee's decision became the final decision of the Commissioner after the Appeals Council denied Plaintiff's request for review on January 25, 2024. (*Id.* at 8–11.) Having exhausted his administrative remedies, Plaintiff filed this appeal with the Court seeking review of ALJ Lee's decision.

## II.    STANDARD OF REVIEW

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). A district court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985) (citations omitted). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). To determine whether an ALJ's decision is supported by substantial evidence, a court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, a court may not set an ALJ's "decision aside if it is supported

by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft*

*v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## III.   THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSI and DIB to "disabled" persons. 42 U.S.C.

§ 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial

gainful activity,

> only if his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience, engage
> in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining

whether a claimant is disabled for purposes of SSI and DIB. 20 C.F.R. § 404.1520.[3] First, the ALJ

determines whether the claimant has shown he or she is not currently engaged in "substantial

gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140

(1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is

automatically denied disability benefits. *Id.* Second, the ALJ determines whether the claimant has

demonstrated a "severe impairment" or "combination of impairments" that significantly limits his

---

[3] Regulations for DIB and SSI are virtually identical. For the purposes of this appeal, further
citations will only be made to the DIB regulations regarding disability evaluation, 20 C.F.R.
§ 404.1501, *et seq.* The parallel SSI benefits regulations are found under 20 C.F.R. § 416.901, *et
seq.*

or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c);

*see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes

necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R.

§ 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if a claimant's impairment(s) is found to be severe, the ALJ then determines whether

the impairment(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates

his or her impairment(s) is equal in severity to, or meets, one of the impairments on the Impairment

List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits.

*See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific impairment is not

listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those

listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. §

404.1526. If there is more than one impairment, then the ALJ must consider whether the

combination of impairments is equal to any listed impairment. *Id.* An impairment or combination

of impairments is basically equivalent to a listed impairment if there are medical findings equal in

severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated at 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R. § 404.1520c (for claims filed after March 27, 2017).

Claimants are not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). However, if the claimant's RFC prevents him or her from doing so, or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step of the process. 20 C.F.R. § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. An ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428.

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146 n.5. An ALJ bears the burden of proof for step five. *Sykes*, 228 F.3d at 263.

On appeal, the harmless error doctrine[4] requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380–81 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19-21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When

---

[4] Harmless error review, which requires the appellant to demonstrate harm, applies to administrative appeals. *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).

substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing *Schaudeck*, 181 F.3d at 431); 42 U.S.C. § 405(g).

## IV. DECISION

Plaintiff appeals ALJ Lee's decision and requests the Court reverse the decision and order the payment of Plaintiff's DIB and SSI benefits for the period between 2017 through 2022, or, alternatively, remand the matter for a new hearing. (ECF No. 14 at 7.) Plaintiff advances the sole argument that ALJ Lee's decision offers "no rationale or evidentiary explanation for its mental RFC" but rather focuses on Plaintiff's capacity for engaging in the physical aspects of employment. (*Id.* at 8–9.) Plaintiff cites to a recent decision in which the Court vacated an ALJ's decision for lack of an adequate explanation of the RFC determination. (*Id.* at 12–13 (citing *Dixon v. Comm'r of Soc. Sec.*, Civ. A. No. 19-10205, 2020 WL 4696746, at *1 (D.N.J. Aug. 13, 2020)).) Plaintiff contends the evidence, which ALJ acknowledges yet ignores in his decision, shows Plaintiff "was unable to muster the mental acuity to subtract seven from one hundred or even three from one hundred in a serial fashion; could not remember five common objects in the examination room after a five[-]minute interval and had 'issues' with understanding, memory, following instructions and completing tasks." (*Id.* at 17.) Similarly, Plaintiff insists ALJ Lee's conclusion is contradicted by evidence in the AR showing: (1) Plaintiff's inability to socialize with others in the workplace (*id.* at 19); (2) his lack of "concentration, persistence and pace" preventing him from completing even "simple" tasks (*id.*); (3) his inability to care for himself, including managing his own funds (*id.* at 20–22); and (4) his admission to the IOP at Summit Oaks, followed by individual therapy, for suicidal ideations, which Plaintiff argues is clear proof of his inability to work (*id.* at 22–24). That Plaintiff required a "higher level of care" following his stay at Summit Oaks incontrovertibly shows, as Plaintiff contends, that he could not "perform a 40[-]hour workweek

17

within customary competitive tolerances performing unskilled work." (*Id.* at 23–24.)

The Commissioner contests Plaintiff's argument that ALJ Lee gave no explanation for the RFC determination, by citing to "a detailed discussion" of "twenty-one paragraphs explaining how the evidence led him to the RFC." (ECF No. 16 at 12–13.) The Commissioner asserts ALJ Lee based his determination on three pieces of evidence: (1) Plaintiff's medical records, which "documented ongoing mental-health conditions but 'also indicate[d] reported improvement and relatively benign mental status examinations with compliance to prescribed medication'" and included no "recurrent emergency room visits or inpatient hospital admissions" (*id.* at 13); (2) Plaintiff's "own description of how he lived his life," replete with "activities show[ing] Plaintiff was not as limited as he alleged" (*id.* at 14); and (3) Plaintiff's admission "he had been working during the relevant period, which was inconsistent with his assertion that he could not work" (*id.*). Bolstered with citations to specific pages and facts from the AR, the Commissioner asserts ALJ Lee's decision was supported by substantial evidence. (*Id.* at 15.)

Plaintiff's true challenge, the Commissioner suggests, "is not procedural but substantive: he disagrees with the ALJ's reading of the evidence" and "invites the Court to second-guess the ALJ[]." (*Id.* at 15–16.) The Commissioner points to several examples in which Plaintiff suggests alternative findings regarding pieces of evidence in the record, such as Plaintiff's recitation of his daily activities, which "show he is incapable of 'the simplest and most routine tasks imaginable.'" (*Id.* at 15 (quoting ECF No. 14 at 20).) In other instances, the Commissioner notes Plaintiff incorrectly recites facts from the record, like when he stated he could not "subtract . . . even three from one hundred in a serial fashion" during the mental status examination with Dr. Brown (*id.* at 16 (quoting ECF No. 14 at 17)), whereas the AR shows he was unable to perform serial sevens "but could perform serial threes" (*id.* (citing Tr. at 29, 854)). The Commissioner further argues

Plaintiff is incorrect in suggesting the medical evidence predating the relevant period beginning in 2017 is irrelevant (*id.* at 17), and ALJ Lee "considered the entire record" in deriving his findings rather than "select[ing] pieces of it" (*id.* at 18). Finally, the Commissioner contends Plaintiff has not met his burden of showing prejudicial error in ALJ Lee's decision. (*Id.* at 18.)

Contrary to Plaintiff's contentions, the Court finds ALJ Lee's decision was well-reasoned and founded on "more than a mere scintilla" of evidence in the record. *Newell*, 347 F.3d at 545. Plaintiff supports his argument with myriad citations to, and quotations from, ALJ Lee's decision to which Plaintiff merely offers substantive disagreements. For example, Plaintiff argues the record—which he claims shows he "was unable to muster the mental acuity to subtract seven from one hundred or even three from one hundred in a serial fashion; could not remember five common objects in the examination room after a five minute interval and had 'issues' with understanding, memory, following instructions and completing tasks"—demonstrates conclusively he is unable to perform at the RFC adjudged by ALJ Lee. (ECF No. 14 at 17.) However, in one respect, Plaintiff misrepresents some of the facts in the record, including those concerning his ability to perform serial threes, as the Commissioner correctly notes (ECF No. 16 at 16), as well as those concerning his ability to manage his own funds; whereas Plaintiff asserts Dr. Brown claimed Plaintiff was resolutely unable to manage his own funds, in fact, Dr. Brown only recommended that Plaintiff not be allowed to do so "until [he] can be better stabilized," presumably with relevant medications and treatment plans. *See supra* Section I.A.1.c. (citing Tr. at 854). In another sense, Plaintiff merely offers alternative conclusions to the ones ALJ Lee was entitled by logic and the law to reach. To illustrate the point, Plaintiff points to his treatment at Omni, which began on August 14, 2019, for which he was recommended a "higher level of care" two months into the program. (*See* ECF No. 14 at 23 (citing Tr. at 954).) In Plaintiff's estimation, this record indicates Plaintiff "required"

19

heightened care and does not support an RFC determination "which remotely suggests that plaintiff could perform a 40[-]hour workweek." (ECF No. 14 at 23–24.) ALJ Lee, acknowledging the same record, noted there was no additional evidence of actual continued treatment until Plaintiff began care at Clear Conscience—almost two years later—on June 10, 2021, as well as Plaintiff's testimony that therapy had been helping him improve. (Tr. at 32.) Provided ALJ Lee's finding regarding this fact is supported by substantial evidence, even if not all the evidence,[5] the Court must affirm. Third Circuit law instructs substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion," *Richardson*, 402 U.S. at 401, and a court must affirm an ALJ's decision "even if [the court] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360.

Plaintiff ignores ALJ Lee's comprehensive and numerous citations to evidence in the AR peppered throughout his decision. Granted, ALJ Lee's decision does not appear to adhere to a particularly clear or rigid analytical structure, but it was far from a recitation of conclusory statements. Indeed, Plaintiff's numerous references to various paragraphs in the decision discussing medical records and/or hearing testimony and analyzing and drawing factual findings from them illustrates that ALJ Lee has duly considered the evidence in the record. (*See* ECF No. 14 at 17–23.) Under Third Circuit law, an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," provided "there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505 (affirming

---

[5] Although required to consider the entire record, an ALJ can make a determination that is contradicted by other evidence as long as substantial evidence exists to support that finding. *See Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009); *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) ("[The Court] will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied.").

ALJ's decision was supported by substantial evidence where, "read as a whole," the decision "illustrates that the ALJ considered the appropriate factors in reaching the conclusion"). In other words, the substance of the analysis is what matters, even where, as here, the decision's structure leaves something to be desired. Because ALJ Lee's decision permits meaningful review with ample citations to the record that give a discernible logic to the findings, the placement of its ultimate determination has no import.

Moreover, Plaintiff's reliance on the *Dixon* decision is unavailing. (*See* ECF No. 14 at 12–13 (citing *Dixon*, 2020 WL 4696746, at *1).) In *Dixon*, the ALJ's decision only lightly gestured to the record evidence, weighing and discussing none in particular, before announcing an RFC determination. 2020 WL 4696746, at *1. On the other hand, here, ALJ Lee consistently refers to record evidence and explains how one or more facts affect his findings and ultimate conclusions. (*See, e.g.*, Tr. at 31 ("As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because they indicate that the claimant's symptoms improved with compliance to prescribed medication.").) Accordingly, because the Court is satisfied the ALJ's decision is supported by substantial evidence, Plaintiff's appeal (ECF No. 1) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## V.    CONCLUSION

For the reasons set forth above, the Court finds Plaintiff failed to show ALJ Lee erred in determining Plaintiff was not disabled and thus not entitled to SSI and/or DIB benefits under the Act. Therefore, Plaintiff's appeal (ECF No. 1) is **DENIED**, and the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

**Dated:** March 19, 2025                      */s/ Brian R. Martinotti*
                                              **HON. BRIAN R. MARTINOTTI**
                                              **UNITED STATES DISTRICT JUDGE**